OTTO R. GUTIERREZ, JR.,
               Plaintiff,

        v.

NANCY A. BERRYHILL, Acting
Commissioner of Social
Security,[1]

              Defendant.

) Case No. CV 16-6957-JPR
)
)
)
) **MEMORANDUM DECISION AND ORDER**
) **AFFIRMING COMMISSIONER**
)
)
)
)
)
)
)

## I.   PROCEEDINGS

Plaintiff seeks review of the Commissioner's final decision denying his application for supplemental security income benefits ("SSI").  The parties consented to the jurisdiction of a U.S. Magistrate Judge under 28 U.S.C. § 636(c).  The matter is before the Court on the parties' Joint Stipulation, filed July 3, 2017, which the Court has taken under submission without oral argument. For the reasons stated below, the Commissioner's decision is

_____

[1] Nancy A. Berryhill is substituted in as the correct Defendant.

affirmed.

**II. BACKGROUND**

Plaintiff was born in 1990. (Administrative Record ("AR") 138.) He completed high school and attended Cerritos Community College. (AR 69, 285, 528.) He has never worked. (AR 75, 174.)

On January 29, 2013, Plaintiff filed an application for SSI, alleging that he had been unable to work since June 24, 2008 (AR 66, 138), because of Asperger's disorder, speech disorder, anxiety disorder, allergies, asthma, and insomnia (AR 66). After his application was denied (AR 82-86), he requested a hearing before an Administrative Law Judge (AR 87-89). A hearing was held on November 13, 2014, at which Plaintiff testified, as did Plaintiff's mother and a vocational expert.[2] (AR 38-59.) In a written decision issued March 6, 2015, the ALJ found Plaintiff not disabled. (AR 26-34.) Plaintiff requested review, which the Appeals Council denied on August 5, 2016. (AR 1-4.) This action followed.

**III. STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. See id.; Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007). Substantial

---

[2] Plaintiff was not represented at the November 13, 2014 hearing (AR 40), but he retained counsel several months before the ALJ issued his decision (AR 135-37) and was represented during the Appeals Council proceedings (AR 198-200).

evidence means such evidence as a reasonable person might accept as adequate to support a conclusion. <u>Richardson</u>, 402 U.S. at 401; <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028, 1035 (9th Cir. 2007). It is more than a scintilla but less than a preponderance. <u>Lingenfelter</u>, 504 F.3d at 1035 (citing <u>Robbins v. Soc. Sec. Admin.</u>, 466 F.3d 880, 882 (9th Cir. 2006)). To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." <u>Reddick v. Chater</u>, 157 F.3d 715, 720 (9th Cir. 1998). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for the Commissioner's. <u>Id.</u> at 720-21.

**IV.  THE EVALUATION OF DISABILITY**

People are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or has lasted, or is expected to last, for a continuous period of at least 12 months. 42 U.S.C. § 423(d)(1)(A); <u>Drouin v. Sullivan</u>, 966 F.2d 1255, 1257 (9th Cir. 1992).

A.  <u>The Five-Step Evaluation Process</u>

The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled. 20 C.F.R. § 416.920(a)(4); <u>Lester v. Chater</u>, 81 F.3d 821, 828 n.5 (9th Cir. 1995) (as amended Apr. 9, 1996). In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is

3

not disabled and the claim must be denied. § 416.920(a)(4)(i).

If the claimant is not engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, the claimant is not disabled and the claim must be denied. § 416.920(a)(4)(ii).

If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R. part 404, subpart P, appendix 1; if so, disability is conclusively presumed. § 416.920(a)(4)(iii).

If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient residual functional capacity ("RFC")[3] to perform his past work; if so, he is not disabled and the claim must be denied. § 416.920(a)(4)(iv). The claimant has the burden of proving he is unable to perform past relevant work. Drouin, 966 F.2d at 1257. If the claimant meets that burden, a prima facie case of disability is established. Id. If that happens or if

---

[3] RFC is what a claimant can do despite existing exertional and nonexertional limitations. § 416.945; see Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989). The Commissioner assesses the claimant's RFC between steps three and four. Laborin v. Berryhill, __ F.3d __, No. 15-15776, 2017 WL 3496031, at *2 (9th Cir. Aug. 16, 2017) (citing § 416.920(a)(4)).

4

the claimant has no past relevant work, the Commissioner then bears the burden of establishing that the claimant is not disabled because he can perform other substantial gainful work available in the national economy. § 416.920(a)(4)(v); <u>Drouin</u>, 966 F.2d at 1257. That determination comprises the fifth and final step in the sequential analysis. § 416.920(a)(4)(v); <u>Lester</u>, 81 F.3d at 828 n.5; <u>Drouin</u>, 966 F.2d at 1257.

B.   <u>The ALJ's Application of the Five-Step Process</u>

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since January 29, 2013, the application date. (AR 28.) At step two, he concluded that Plaintiff had severe impairments of "paranoid schizophrenia and Asperger's syndrome." (<u>Id.</u>) At step three, he determined that Plaintiff's impairments did not meet or equal a listing. (AR 29.)

At step four, the ALJ found that Plaintiff had the RFC to perform all physical work at all exertional levels but with the following nonexertional limitations: he "can understand and remember tasks; can sustain concentration and persistence; can adapt to workplace changes frequently enough to perform unskilled, low stress jobs that require simple instructions; and should have no job requiring interaction with the general public." (AR 30.) Plaintiff had no past relevant work for the ALJ to evaluate against this RFC. (AR 32.) Based on the VE's testimony, he found that Plaintiff could perform jobs existing in significant numbers in the national economy. (AR 33.) Accordingly, he found Plaintiff not disabled. (AR 33-34.)

# V. DISCUSSION

Plaintiff alleges that the ALJ erred in (1) assessing the medical evidence (J. Stip. at 3-5, 7-8, 14) and (2) evaluating his credibility (id. at 15-16, 21-22).[4]  Remand is not warranted on either basis.

## A.  The ALJ Did Not Err in Assessing the Medical Evidence

Plaintiff contends that his "impairments were more severe than are reflected in the ALJ's decision." (Id. at 8.)  He argues that the ALJ did not recognize that his symptoms were getting worse over the course of 2014 and that the ALJ's analysis of his GAF scores was misguided.  (Id. at 8, 14.)  For the reasons discussed below, remand is not warranted on this basis.

### 1.  Applicable law

Three types of physicians may offer opinions in Social Security cases: (1) those who directly treated the plaintiff, (2) those who examined but did not treat the plaintiff, and (3) those who did neither.  Lester, 81 F.3d at 830.  A treating physician's opinion is generally entitled to more weight than that of an examining physician, and an examining physician's opinion is

---

[4] For convenience and other reasons, the Court has combined the parties' three disputed issues into two.  Plaintiff also contends that the "record was inadequate because it was missing approximately one year of treatment notes." (J. Stip. at 7.) Any error in this regard was harmless.  Though the additional medical evidence was not considered by the ALJ, Plaintiff submitted it to the Appeals Council.  (AR 6.)  It "considered . . . the additional evidence" and "found that [the] information [did] not provide a basis for changing the [ALJ's] decision." (AR 2.)  As such, the evidence is part of the record, see Brewes v. Astrue, 682 F.3d 1157, 1163 (9th Cir. 2012), and the only question is whether the ALJ's decision was correct in light of it and the rest of the medical evidence.

generally entitled to more weight than that of a nonexamining physician. Id.

This is true because treating physicians are employed to cure and have a greater opportunity to know and observe the claimant. Smolen v. Chater, 80 F.3d 1273, 1285 (9th Cir. 1996). If a treating physician's opinion is well supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the record, it should be given controlling weight. § 416.927(c)(2).[5] If a treating physician's opinion is not given controlling weight, its weight is determined by length of the treatment relationship, frequency of examination, nature and extent of the treatment relationship, amount of evidence supporting the opinion, consistency with the record as a whole, the doctor's area of specialization, and other factors. § 416.927(c)(2)-(6).

When a treating or examining physician's opinion is not contradicted by other evidence in the record, it may be rejected

___

[5] Social Security regulations regarding the evaluation of opinion evidence were amended effective March 27, 2017. When, as here, the ALJ's decision is the final decision of the Commissioner, the reviewing court generally applies the law in effect at the time of the ALJ's decision. See Lowry v. Astrue, 474 F. App'x 801, 804 n.2 (2d Cir. 2012) (applying version of regulation in effect at time of ALJ's decision despite subsequent amendment); Garrett ex rel. Moore v. Barnhart, 366 F.3d 643, 647 (8th Cir. 2004) ("We apply the rules that were in effect at the time the Commissioner's decision became final."); Spencer v. Colvin, No. 3:15-CV-05925-DWC, 2016 WL 7046848, at *9 n.4 (W.D. Wash. Dec. 1, 2016) ("42 U.S.C. § 405 does not contain any express authorization from Congress allowing the Commissioner to engage in retroactive rulemaking"). Accordingly, citations to 20 C.F.R. § 416.927 are to the version in effect from August 24, 2012, to March 26, 2017.

only for "clear and convincing" reasons.  See Carmickle v.
Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1164 (9th Cir. 2008)
(quoting Lester, 81 F.3d at 830-31).  When it is contradicted,
the ALJ must provide only "specific and legitimate reasons" for
discounting it.  Id. (quoting Lester, 81 F.3d at 830-31).  The
weight given an examining physician's opinion, moreover, depends
on whether it is consistent with the record and accompanied by
adequate explanation, among other things.  § 416.927(c)(3)-(6).
These factors also determine the weight afforded the opinions of
nonexamining physicians.  § 416.927(e).

The ALJ's findings and decision should be upheld if they are
free of legal error and supported by substantial evidence based
on the record as a whole.  See 42 U.S.C. § 405(g); Richardson,
402 U.S. at 401; Parra, 481 F.3d at 746.  The ALJ must consider
all the medical opinions "together with the rest of the relevant
evidence."  20 C.F.R. § 416.927(b).  If the "'evidence is
susceptible to more than one rational interpretation,' the ALJ's
decision should be upheld."  Ryan v. Comm'r of Soc. Sec., 528
F.3d 1194, 1198 (9th Cir. 2008) (citation omitted).

2.  Relevant facts

To support his application for SSI, Plaintiff provided
almost six years of clinical records (see AR 224) and almost four
years of treatment notes from various doctors at Kaiser
Permanente (see AR 280-471, 541-53).  These included treatment
notes from 12 visits with Dr. Oscar Estrada, Plaintiff's treating
psychiatrist, through January 21, 2014.  (AR 335, 428, 447, 454,
461, 483, 489, 491, 495, 497, 499, 505.)  The ALJ held the record
open for 30 days after Plaintiff's hearing to allow him to obtain

8

and submit an evaluation from Dr. Estrada regarding his mental condition as it applied to his ability to work. (AR 53-55, 57-58.) Despite obtaining counsel shortly after the hearing — and three months before the ALJ issued his decision — Plaintiff never submitted an evaluation by Dr. Estrada or any additional treatment notes from him to the ALJ.

To supplement the record, the ALJ ordered a psychological consultative examination (AR 63), which was completed on June 25, 2014, by Dr. Kara Cross (AR 527-31). Dr. Cross assigned Plaintiff a global assessment of functioning ("GAF") score of 52.[6] (AR 530.) She found that Plaintiff had no significant limitations in understanding and following simple tasks for an eight-hour day and 40-hour workweek as long as he was not under any time pressure and wasn't working with the public; he had moderate limitations in performing complex tasks for long hours and interacting properly with peer supervisors and the public. (AR 530.)

Plaintiff began treatment with Dr. Estrada in December 2010. (AR 335.) He "report[ed] experiencing depressive and anxiety [symptoms, including] insomnia, variable appetite, irritability and sadness." (AR 336.) Dr. Estrada assigned him a GAF score of 55. (AR 337.) In August 2012, Plaintiff complained of similar

---

[6] GAF scores assess a person's overall psychological functioning on a scale of 1 to 100. See Diagnostic and Statistical Manual of Mental Disorders 32 (revised 4th ed. 2000). A GAF score of 51 to 60 indicates moderate symptoms or difficulty in social, occupational, or school functioning. See id.

symptoms and was also experiencing "polyphagia,[7] fear of being alone, [and] excessive worry"; he said he "ha[d] become isolated, irritable and verbally aggressive." (AR 429.) Dr. Estrada observed that Plaintiff's attitude was "uncooperative, defensive and somewhat hostile," his mood was "sad and irritable," and his affect was "blunted." (Id.) Plaintiff was "[n]on-compliant with medication" (id.), and his GAF score was 45 (AR 430).[8]

By January 2013, after Plaintiff became "compliant with medication," he reported that "[h]is mood [had] improved [and he was] experiencing less tantrums and irritability." (AR 455.) Dr. Estrada noted that his attitude was "cooperative" though his mood was "anxious." (Id.) Throughout 2013, Plaintiff's treatment notes show, he was "overall stable and open to medication for depression and anxiety" (AR 491 (May 21, 2013)), "moderate[ly] improv[ing] . . . since he restarted his medication" (AR 495 (July 19, 2013)), "not explosive anymore and . . . less anxious" (AR 497 (Aug. 25, 2013)), and not experiencing "any psychiatric" symptoms" (AR 499 (Oct. 22, 2013)). Dr. Estrada's treatment notes stop recording Plaintiff's GAF scores after July 2013, when he assigned him a score of 50. (See AR 496.) In January 2014, Plaintiff reported "episodes of rage and aggressive behavior" as well as "increasing anxiety, insomnia and irritability." (AR 505.) Nonetheless, Dr. Estrada recorded that there were "no major changes since [Plaintiff's]

---

[7] Polyphagia is the medical term for excessive eating. Stedman's Medical Dictionary 1424 (27th ed. 2000).

[8] A GAF score of 41 to 50 indicates "serious symptoms." See DSM-IV 32.

10

last visit," his attitude was "cooperative," and he was "stable." (AR 505-06.)

The treatment notes Plaintiff submitted with his appeal spanned four visits with Dr. Estrada, from January 21, 2014, through January 7, 2015. (AR 5, 542-53.) The records from one of those visits, in January 2014, were before the ALJ (see 505-06, 542-44), so the additional evidence represents treatment notes from three doctor's visits (see AR 545-47 (Apr. 2014), 548-50 (June 2014), 551-53 (Jan. 2015)). In April 2014, Plaintiff was "cooperative, [though] initially agitated." (AR 546.) He reported symptoms of "insomnia, irritability, excessive worry and agitation." (Id.) Dr. Estrada noted that Plaintiff was "stable for outpatient treatment" though "non-compliant with medication." (Id.) By June 2014, Plaintiff reported similar symptoms, was "stable," and was "compliant with medication." (AR 549.) Treatment notes show that his "stressors" included his SSI appeal and his brother's wedding. (Id.) Finally, in January 2015, Plaintiff was "cooperative" though "very upset because [his] SSI [had been] denied for the 3rd time." (AR 552.) He was still "stable" and "compliant with medication." (AR 553.)

3. Analysis

Plaintiff claims the ALJ erred in evaluating "the severity of [his] symptoms." (J. Stip. at 14.) He relies on the allegedly worsening symptoms shown in the evidence he submitted with his appeal and on the supposed ambiguity noted by the ALJ in his GAF scores. (Id. at 8, 14.)

Although Plaintiff implies that the ALJ did not give enough weight to Dr. Estrada's opinion (see id. at 7-8 (citing law

11

regarding rejecting treating physician's opinion but not
explicitly raising issue)), the ALJ in fact relied on Dr.
Estrada's treatment notes (see, e.g., AR 31), as well as Dr.
Cross's psychological evaluation (see AR 527-31),[9] in assessing
Plaintiff's mental impairments, and substantial evidence supports
the ALJ's decision.

Dr. Estrada's four years of treatment notes — including
those submitted for the first time to the Appeals Council — show
that Plaintiff was stabilizing over time and that his enduring
symptoms were managed through medication. See Presley-Carrillo
v. Berryhill, __ F. App'x __, No. 15-17286, 2017 WL 2839505, at
*2 (9th Cir. July 3, 2017) (holding ALJ's discounting of
claimant's testimony supported by substantial evidence when
treatment notes indicated treatment rendered her mentally
stable); § 416.929 (allowing ALJ to consider effectiveness of
treatment as factor in determining severity of claimant's
symptoms). His new medical evidence — made up of three meetings
with Dr. Estrada over the course of 2014 — provides further
support for the ALJ's finding that although Plaintiff had severe
mental impairments "impos[ing] more than a minimal effect on
[his] ability to perform basic work activities" (AR 28),
"treatment [had] been generally successful in controlling those
symptoms" (AR 31). Plaintiff argues that Dr. Estrada's notes
from 2014 show that his symptoms were worsening. (J. Stip. at
8.) He cites treatment notes from January 2014 to show that he

---

[9] The ALJ gave "great weight" to Dr. Cross's opinion (AR
32), which Plaintiff has not challenged.

"continued having episodes of rage and aggressive behavior"
(id.), but Dr. Estrada also noted at the time that he was "stable
[though] having problems coping with stress" (AR 543). He refers
to Dr. Estrada's observance of possible "paranoid delusions" in
April 2014 (J. Stip. at 8), but at that time his attitude was
"cooperative" and his thought process was "coherent" (AR 546).
Moreover, the "[p]ossibly paranoid [d]elusions" correlated with
Plaintiff's "non-complian[ce] with medication." (Id.) Dr.
Estrada's treatment notes for June 2014 reveal that secondary
stressors, such as his SSI case and his brother's wedding,
contributed to Plaintiff's anxiety, as they might with anyone.
(See AR 549.) Moreover, at about the same time as his June 2014
appointment with Dr. Estrada, Dr. Cross found that Plaintiff had
only a few moderate limitations (AR 530), which the ALJ accepted
and incorporated into the RFC and which Plaintiff has not
challenged. Finally, in January 2015, despite exhibiting
continued anxiety regarding his SSI denial, Plaintiff was
"compliant with medication" and "stable for outpatient
treatment." (AR 553.)

Nothing requires a claimant to be entirely free of symptoms
in order to work. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.
1989) (noting that disability benefits are intended for "people
who are unable to work; awarding benefits in cases of
nondisabling pain would expand the class of recipients far beyond
that contemplated in the statute"). The ALJ properly assessed
Plaintiff's limitations and incorporated them into the RFC, see
Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1173-74 (9th Cir.
2008) (moderate limitations accounted for by restriction in RFC

to "simple, routine, repetitive tasks"), and Dr. Estrada's few later treatment notes were consistent with those findings.

Plaintiff's claim about the ALJ's analysis of his GAF scores is similarly unconvincing. The ALJ did not ultimately place much weight on them, noting that the scores "were only a snapshot in time." (AR 31.) Moreover, Plaintiff's fluctuating GAF score was unreliable as an "indication of his overall mental health over a twelve month period" (id.), especially as Dr. Estrada stopped recording the score around the time Plaintiff once again became stable and compliant with medication. Further, to the extent Plaintiff contends his scores show that his condition was serious, his most recent GAF assessment, a score of 52, was completed by Dr. Cross in June 2014 (AR 530) and indicates only moderate symptoms or difficulty in social, occupational, or school functioning, see Diagnostic and Statistical Manual of Mental Disorders 32 (revised 4th ed. 2000). Plaintiff takes issue with the ALJ's statement that a "score of 50 is very close to a finding of moderate symptoms" when in fact the score indicates "serious" symptoms. (J. Stip. at 8 (citing AR 31).) But his most recent GAF score was 52, squarely in the "moderate" range, where the majority of his scores fell. In any case, the Commissioner has declined to endorse GAF scores, Revised Medical Criteria for Evaluating Mental Disorders and Traumatic Brain Injury, 65 Fed. Reg. 50764-65 (Aug. 21, 2000) (codified at 20 C.F.R. pt. 404) (GAF score "does not have a direct correlation to the severity requirements in our mental disorders listings"), and the most recent edition of the DSM "dropped" the GAF scale, citing its lack of conceptual clarity and questionable

14

psychological measurements in practice. <u>Diagnostic and</u>
<u>Statistical Manual of Mental Disorders</u> 16 (5th ed. 2012).

Thus, the ALJ's decision was supported by substantial
evidence based on the record as a whole, and remand is not
warranted on this basis.

    B.   <u>The ALJ Properly Assessed Plaintiff's Credibility</u>

Plaintiff argues that the ALJ erred because he "dismissed
the Plaintiff's complaints without the most recent medical
evidence" (J. Stip. at 16), his "activities of daily living are
more restricted [than] those presented by the ALJ" (<u>id.</u> at 21),
and the ALJ's analysis of his treatment plan did not recognize
its intensive nature (<u>id.</u> at 22). For the reasons discussed
below, the ALJ did not err, and if he did, any error was
harmless.

    1.   <u>Applicable law</u>

An ALJ's assessment of symptom severity and claimant
credibility is entitled to "great weight." <u>See</u> <u>Weetman v.</u>
<u>Sullivan</u>, 877 F.2d 20, 22 (9th Cir. 1989); <u>Nyman v. Heckler</u>, 779
F.2d 528, 531 (9th Cir. 1986). "[T]he ALJ is not required to
believe every allegation of disabling pain, or else disability
benefits would be available for the asking, a result plainly
contrary to 42 U.S.C. § 423(d)(5)(A)." <u>Molina v. Astrue</u>, 674
F.3d 1104, 1112 (9th Cir. 2012) (citing <u>Fair</u>, 885 F.2d at 603).

In evaluating a claimant's subjective symptom testimony, the
ALJ engages in a two-step analysis. <u>See</u> <u>Lingenfelter</u>, 504 F.3d

at 1035-36; <u>see also</u> SSR 96-7p, 1996 WL 374186 (July 2, 1996).[10]
"First, the ALJ must determine whether the claimant has presented
objective medical evidence of an underlying impairment [that]
could reasonably be expected to produce the pain or other
symptoms alleged." <u>Lingenfelter</u>, 504 F.3d at 1036. If such
objective medical evidence exists, the ALJ may not reject a
claimant's testimony "simply because there is no showing that the
impairment can reasonably produce the <u>degree</u> of symptom alleged."
<u>Smolen</u>, 80 F.3d at 1282 (emphasis in original).

If the claimant meets the first test, the ALJ may discredit
the claimant's subjective symptom testimony only if the ALJ makes
specific findings that support the conclusion. <u>See Berry v.
Astrue</u>, 622 F.3d 1228, 1234 (9th Cir. 2010). Absent a finding or
affirmative evidence of malingering, the ALJ must provide "clear
and convincing" reasons for rejecting the claimant's testimony.
<u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 493 (9th Cir. 2015) (as
amended); <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090,
1102 (9th Cir. 2014). The ALJ may consider, among other factors,
(1) ordinary techniques of credibility evaluation, such as the
claimant's reputation for lying, prior inconsistent statements,
and other testimony by the claimant that appears less than
candid; (2) unexplained or inadequately explained failure to seek
treatment or to follow a prescribed course of treatment; (3)
the claimant's daily activities; (4) the claimant's work record;

---

[10] Social Security Ruling 16-3p, 2016 WL 1119029, effective
March 28, 2016, rescinded SSR 96-7p, which provided the framework
for assessing the credibility of a claimant's statements. SSR
16-3p was not in effect on March 6, 2015, however, when the ALJ
issued his decision.

and (5) testimony from physicians and third parties. <u>Rounds v.</u>
<u>Comm'r Soc. Sec. Admin.</u>, 807 F.3d 996, 1006 (9th Cir. 2015) (as
amended); <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir.
2002). If the ALJ's credibility finding is supported by
substantial evidence in the record, the reviewing court "may not
engage in second-guessing." <u>Thomas</u>, 278 F.3d at 959.

### 2.  Relevant background

Dr. Cross completed her psychological evaluation of
Plaintiff on June 25, 2014. (AR 527-31.) Her observations of
Plaintiff included that "[h]e had no impairment to [his] fine
motor skills, . . . [s]peech, hearing [or] vision." (AR 527-28.)
"He was not having trouble with attention or concentration." (AR
528.) She noted that his mood was "mostly stable," and "[h]e did
not appear to be angry or in distress but was anxious." (AR
529.) She said he "was slow to process information," but "[h]e
put out good effort." (AR 528.) She reported that he claimed he
was "not sleeping well or eating well": "he [said] he feels
hungry because he is stressed a lot" and wasn't sleeping well
because of "ghosts that haunt him at night." (AR 529.)

Plaintiff told Dr. Cross that he was able to "do household
chores and to dress and bathe." (<u>Id.</u>) "He spends his day
helping out around the house and exercising" and is able to drive
a car. (<u>Id.</u>) She noted a few moderate limitations but otherwise
assessed Plaintiff as able to work. (AR 530.) The ALJ gave
"great weight" to Dr. Cross's evaluation because it was
"supported by the treating records, the claimant's own
statements, reported activities of daily living, and [other]
objective findings." (AR 32.)

17

Dr. Cross's evaluation largely aligns with Dr. Estrada's treatment notes. Dr. Estrada first saw Plaintiff in December 2010 and noted that his mood was anxious and his affect was blunted. (AR 336.) In August 2012, Plaintiff was "uncooperative, defensive and somewhat hostile." (AR 429.) By 2013, Plaintiff showed increased stability, though his symptoms still fluctuated: in January, "[h]is mood [had] improved [and he was] experiencing less tantrums and irritability" (AR 455); in February, July, August, and October he was "improving and stable" (AR 463); but in May he complained of "increasing depressive" symptoms (AR 492). In January 2014, Dr. Estrada noted that Plaintiff was "stable but having problems coping with stress." (AR 506.) In April 2014, Plaintiff's symptoms included "insomnia, irritability, excessive worry and agitation," but he had a "cooperative" attitude and was "stable for outpatient treatment." (AR 546.) Dr. Estrada noted he was "non-compliant with medication." (<u>Id.</u>) In June 2014 and January 2015, Plaintiff resumed "complian[ce] with medication" and continued to be "stable for outpatient treatment." (AR 549, 553.)

In a Function Report completed on March 7, 2013, Plaintiff noted that his daily activities included "doing [his] bedroom, wash[ing] dishes/cleaning the kitchen, vaccuming [sic] the apartment, doing laundry[], going to the gym, tak[ing] out the trash, cleaning the bathroom, [and] check[ing] [his] email accounts." (AR 175.) He watched TV, went to Bally Fitness, and walked with his parents daily. (AR 178, 231.) He had no problems with personal care (AR 175), prepared his own food (AR 176), and shopped "once or twice a week [for] about two or three

18

hours" (AR 177).  He stated that he got along "very well" with authority figures, namely, his teacher at school.  (AR 180.)  In a Disability Determination Explanation completed on May 30, 2013, Plaintiff was noted for "talk[ing] on the face book with others daily."  (AR 71.)  He also "usually [went] to Laughlin 2 times a year during the summer" with his family.  (AR 368.)

At the November 13, 2014 hearing, Plaintiff testified that he had attended Cerritos Community College several days a week for six years, taking general-education courses and a computer class.  (AR 43, 45.)  Plaintiff stated that he spent his days going to class, studying, and doing homework.  (AR 49-50.)  He claimed never to go outside the house other than to school.  (AR 49.)  He alleged that people, including employers he had applied to work for, discriminated against him because of his disability.  (AR 48-49.)  When asked by the ALJ about any mental healthcare or treatment he was receiving, Plaintiff said that he sees a psychiatrist once a month and takes three pills a day (AR 45-46): Zoloft, Seroquel, and Lamictal for his Asperger's, depression, and anger problems (AR 47-48).  Plaintiff's mother also testified at the hearing.  (AR 51.)  She stated that he cleans the house often, "maybe two or three times a day."  (Id.)  She also said that he is alone "all the time" and is sometimes "very rude with" her.  (AR 52.)

### 3.  Analysis

The ALJ discredited some of Plaintiff's complaints, finding that although his "medically determinable impairments could reasonably be expected to cause the alleged symptoms," his "statements concerning the intensity, persistence and limiting

19

effects of [those] symptoms [were] not entirely credible." (AR 31.) As discussed below, to the extent the ALJ rejected Plaintiff's subjective complaints, he provided clear and convincing reasons for doing so.

First, the ALJ found that Plaintiff's "daily activities . . . [were] not limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (AR 30.) An ALJ may properly discount a plaintiff's credibility when his daily activities are inconsistent with his subjective symptom testimony. See Molina, 674 F.3d at 1112 (citing Lingenfelter, 504 F.3d at 1040)). "Even where those [daily] activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of a totally debilitating impairment." Id. at 1113. Indeed, Plaintiff's activities were considerably more wide-reaching than his alleged disability would indicate. He often did household chores, such as washing dishes, vacuuming the apartment, doing laundry, and taking out the trash. (AR 175.) He checked his email, spent time on Facebook, cooked for himself, and "shop[ped] once or twice a week [for] about two or three hours." (AR 175-78.) He drove himself to school and to the gym daily (see AR 178, 529), activities that inherently require going outside and interacting with people.[11] These activities are inconsistent with Plaintiff's allegation that he is totally

---

[11] Although Plaintiff indicated at the hearing that he never left the house except to go to school (AR 49), he admitted elsewhere that he went to a Bally Fitness gym every day (see, e.g., AR 178, 231).

disabled and unable to function, see Matthews v. Shalala, 10 F.3d
678, 679-80 (9th Cir. 1993) (affirming ALJ's finding that
"attending school . . . [is] an activity which is inconsistent
with an alleged inability to perform all work"); Presley-
Carrillo, __ F. App'x __, 2017 WL 2839505, at *2 (discounting
claimant's testimony concerning disabling nature of symptoms when
it conflicted with evidence of daily activities and effective
treatment), in particular because he allegedly has difficulty
being around people.

Second, the ALJ noted that Plaintiff received "routine
and/or conservative" treatment that had been "relatively
effective in controlling the [Plaintiff's] symptoms." (AR 31.)
"Impairments that can be controlled effectively with medication
are not disabling for the purpose of determining eligibility for
SSI benefits." Warre v. Comm'r of Soc. Sec., 439 F.3d 1001, 1006
(9th Cir. 2006). Dr. Estrada's treatment notes confirm that
Plaintiff stabilized and showed "moderate improvement" after
becoming "compliant with medication." (AR 495.) After being
prescribed and agreeing to follow a treatment course of
Lamictal[12] and Seroquel[13] in November 2012 (AR 448), Plaintiff
showed a decrease in symptoms. In January 2013, he reported that

[12] Lamictal is an antiepileptic medication that is also used
to delay mood episodes in adults with bipolar disorder (manic
depression). See Lamictal, Drugs.com, https://www.drugs.com/
lamictal.html (last updated Apr. 30, 2015).

[13] Seroquel is an antipsychotic medicine that is used to
treat schizophrenia and bipolar disorder. It is also used
together with antidepressants to treat major depressive disorder
in adults. See Seroquel, Drugs.com, https://www.drugs.com/
seroquel.html (last updated Feb. 28, 2017).

21

his "mood [had] improved [and that he was] experiencing less tantrums and irritability." (AR 455.) In February 2013, after discontinuing Seroquel but continuing to take Lamictal, Plaintiff "report[ed] feeling better, less irritable, impulsive and [a]ggressive since his medication was adjusted." (AR 462.) In March 2013, he "report[ed] doing well since the addition of Lamictal," though his mother stated that he "forgets to take his medication frequently." (AR 489.) Dr. Estrada's notes from followup visits in August and October 2013 show that Plaintiff was "improving and stable." (AR 498, 500.) His notes from a January 21, 2014 visit show that Plaintiff was "stable but having problems coping with stress" even though he was "compliant with medication." (AR 506.) In April 2014, Plaintiff was "non-compliant with medication" when Dr. Estrada observed that Plaintiff was possibly exhibiting paranoid delusions. (AR 546.) In June 2014 and January 2015, Plaintiff was again "compliant with medication" and "stable for outpatient treatment," with no further mention of possible paranoia in his treatment notes. (AR 549, 553.) Thus, even if the ALJ was wrong in finding that the treatment was routine or conservative, see, e.g., Childress v. Colvin, No. EDCV 14-0009-MAN, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (finding treatment of prescription antidepressants, prescription antipsychotics, and talk therapy not properly characterized as conservative), he did not err in concluding that it was largely effective. Plaintiff was generally stable, and to the extent he suffered from anxiety, it did not prevent him from regularly venturing out into the world.

Finally, to the extent Plaintiff argues that "the [ALJ's]

22

credibility analysis was insufficient because the ALJ dismissed the Plaintiff's complaints without the most recent medical evidence" (see J. Stip. at 16), that contention has been dispensed with above. The treatment notes from the three additional visits with Dr. Estrada are part of the record and do not reveal any new or significantly different information from what the ALJ considered and addressed.

In sum, the ALJ provided clear and convincing reasons for finding Plaintiff only partially credible. Because those findings were supported by substantial evidence, this Court may not engage in second-guessing. See Thomas, 278 F.3d at 959. Plaintiff is not entitled to remand on this ground.

## VI.    CONCLUSION

Consistent with the foregoing and under sentence four of 42 U.S.C. § 405(g),[14] IT IS ORDERED that judgment be entered AFFIRMING the Commissioner's decision, DENYING Plaintiff's request for remand, and DISMISSING this action with prejudice.


DATED: September 13, 2017_    _____
                                JEAN ROSENBLUTH
                                U.S. Magistrate Judge

---

[14] That sentence provides: "The [district] court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing."